*981 OPINION
By the Court,
Maupin, J.:
In this appeal, we consider whether we should extend the holding in our decision in McConnell v. State[1] to bar the dual use of torture as a theory of first-degree murder and as an aggravating circumstance to support a death sentence. We conclude that McConnell does not preclude the State from securing a murder conviction based upon a theory of torture and alleging torture as an aggravating circumstance in seeking a death sentence. Nevada’s definition of torture murder sufficiently narrows the class of persons eligible for the death penalty to allow the dual use of torture as exercised in this case. However, McConnell requires us to strike the burglary aggravating circumstance, leaving two remaining aggravating circumstances — the murder involved torture or mutilation and the defendant subjected the victim to nonconsensual sexual penetration. After reweighing the remaining aggravating and mitigating evidence, we conclude beyond a reasonable doubt that the jury would have found appellant Fernando Navarro Hernandez death eligible and imposed death absent the erroneous aggravating circumstance. We therefore affirm the district court’s order denying post-conviction relief.

*982
FACTS

Hernandez was convicted of first-degree murder, burglary while in possession of a weapon, second-degree kidnapping, and unlawful sexual penetration of a dead body. The murder victim was Hernandez’s ex-wife, Donna. Hernandez murdered Donna at her home and kidnapped their three-year-old daughter Ana, who witnessed the killing.
At approximately 7 a.m. on October 6, 1999, Hernandez was stopped for speeding by Las Vegas Metropolitan Police Officer David Swoboda. Rather than remaining inside his vehicle, Hernandez exited, crying. Officer Swoboda noticed Hernandez had cuts on his face and hand and asked him what happened. Hernandez said he had fought with his ex-wife. Through his police computer, Officer Swoboda learned that Donna had taken out a protective order against Hernandez. Suspecting domestic violence, Officer Swoboda requested officers be sent to Donna’s home.
Officers responding to Donna’s house found her body on the stairs. An autopsy revealed that she had been strangled to death, manually and by an object such as a foot or a knife placed against her throat. She also sustained multiple stab and slash wounds and blunt force head trauma. Apparently postmortem, a dinner knife had been thrust into her vagina with sufficient force to perforate the vaginal wall and penetrate her abdominal cavity. A seven-inch serrated knife, its blade broken from the handle, was found near her body; Hernandez’s palm print was found on it. Hernandez’s and Donna’s DNA were found in the blood at the crime scene, on the pajamas Ana was wearing when Hernandez was arrested, and on the ring taken from Hernandez’s hand when he was booked into custody.
This court affirmed the judgment of conviction and sentence on direct appeal.[2] Hernandez timely filed a post-conviction petition for a writ of habeas corpus, which the district court denied after conducting an evidentiary hearing. This appeal followed.

DISCUSSION

Application of McConnell v. State
Hernandez argues that the burglary aggravating circumstance is invalid under McConnell and that McConnell should also be applied to invalidate the torture aggravating circumstance. We agree that the burglary aggravator is invalid under McConnell, but we decline to extend that case to invalidate the torture aggravating circumstance. After striking the burglary aggravating circumstance, we conclude beyond a reasonable doubt that the jury would have found Hernandez death eligible and sentenced him to death.

*983
Burglary aggravating circumstance

Two years after upholding Hernandez’s conviction and death sentence on direct appeal, this court decided McConnell, holding that it is unconstitutional ‘ ‘to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated.”[3] This court subsequently held that McConnell applied retroactively to cases that were final when it was decided.[4] Here, the State sought a murder conviction based upon three theories: premeditation and deliberation, felony murder during a kidnapping and/or burglary, and murder by torture. The jury found three circumstances aggravating the murder: Hernandez subjected the victim to nonconsensual sexual penetration, the murder was committed during a burglary, and the murder involved torture or mutilation.[5] The jury’s verdict is silent as to which theory or theories the jury relied on in finding Hernandez guilty of first-degree murder. Accordingly, the burglary aggravating circumstance is invalid under McConnell.

Torture aggravating circumstance

Hernandez argues that, similar to McConnell’s holding respecting felony murder, it is unconstitutional for the State to charge first-degree murder based on torture and also base an aggravating circumstance on the same act or acts of torture unless it is clear that the jury did not rely on torture murder in finding the defendant guilty. Therefore, according to Hernandez, because it is unclear whether the jurors relied on the torture-murder theory to find him guilty of first-degree murder, the torture aggravating circumstance must be stricken. We disagree.
In McConnell, we concluded that the United States and Nevada Constitutions require a capital sentencing scheme to “ ‘genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.’ ”[6] Noting the United States Supreme Court decision in Lowenfield v. Phelps,[7] we recognized that this narrowing function may be achieved by one *984 of two means — “ ‘[t]he legislature may itself narrow the definition of capital offenses’ ” or “ ‘the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase.’”[8] Thus, to assess whether Nevada’s capital felony-murder scheme provided sufficient narrowing to pass constitutional scrutiny, we asked two questions in McConnell: “First, is Nevada’s definition of capital felony murder narrow enough that no further narrowing of death eligibility is needed once the defendant is convicted? Second, if not, does the felony aggravator sufficiently narrow death eligibility to reasonably justify the imposition of a death sentence on the defendant?”[9]
Accordingly, here, we must first determine whether Nevada’s definition of torture murder is sufficiently narrow such that no further narrowing of death eligibility is needed once the defendant is convicted. We conclude that it is and that no further narrowing is required. Consequently, we need not address the second question posed in McConnell.
Torture murder identifies a constitutionally narrow class of murders, which only includes those defendants who act with calculated intent to inflict pain for revenge, extortion, persuasion, or for any sadistic purpose and to inflict pain beyond the killing itself.[10] We conclude that the definition of torture murder assuages the risk of unconstitutional arbitrariness that the narrowing function is designed to avoid.
Moreover, the concern engendering our ruling in McConnell is not present here. Nothing in McConnell prohibits per se using the same conduct to support a murder theory and an aggravating circumstance.[11] Our reasoning in McConnell centered on whether felony murder performed an adequate narrowing function. Specifically, we held that Nevada’s felony-murder statute was too broad to provide sufficient narrowing because it did not require the defendant to have the intent to kill.[12] Rather, the intent simply to *985 commit the underlying felony is “ ‘transferred to supply the malice necessary to characterize the death a murder.’ ”[13] Torture murder, on the other hand, includes an intent element because malice must still be proved.[14]
As the definition of torture murder performs a constitutionally satisfactory narrowing function and does not implicate the concerns we expressed in McConnell, we conclude that McConnell does not render the torture aggravating circumstance invalid.

Reweighing

After striking the burglary aggravating circumstance, we may reweigh the aggravating and mitigating evidence or conduct a harmless-error review.[15] The question is whether it is “clear that absent the erroneous aggravator the jury would have imposed death.”[16]
The jurors found seven mitigating circumstances: Hernandez lacked a significant criminal history; he committed the murder while under extreme mental or emotional disturbance; he accepted responsibility for the crime; he expressed remorse; he was intoxicated at the time of the crime; he had been gainfully employed throughout his adult life; and he spared the life of his three-year-old daughter, who was present during the crime, even though he had threatened to kill her. Two valid aggravating circumstances remain against Hernandez: the murder involved torture or mutilation of the victim, and he subjected the victim to nonconsensual sexual penetration immediately before, during, or after the murder.
In reweighing the aggravating and the mitigating evidence, we are convinced beyond a reasonable doubt that the jury would have found Hernandez death eligible. An autopsy revealed that Donna died from strangulation, evidenced by bruising on her neck caused by fingers and the placement of a foot or knife against her neck.[17] *986 The viciousness of Hernandez’s attack on Donna was manifestly illustrated by evidence of a stab wound inflicted near her heart, piercing her left lung with such force as to strike a rib in her back.[18] Donna also sustained stab wounds to each side of her neck, penetrating into the area of her carotid arteries.[19] These injuries were inflicted in addition to other multiple stab and slash wounds and blunt force head trauma.[20]
The brutality of the killing did not end with the injuries described above. The autopsy revealed the tip of the handle of a dinner knife protruding from Donna’s vagina.[21] Hernandez thrust the dinner knife into Donna’s vaginal cavity with such force as to perforate the vaginal wall and penetrate the abdominal cavity.[22] Although this injury was likely inflicted after Donna expired, the abject viciousness of this act exemplifies the utterly reprehensible and cruel nature of the killing. We recognize that Hernandez presented credible evidence in mitigation that he had accepted responsibility and expressed remorse for the murder, he was a hard-working, law-abiding person prior to the event, he was under extreme emotional distress and intoxicated when he killed Donna, and he spared his daughter’s life despite threats to kill her. However, we conclude that this evidence is woefully insufficient to outweigh the two remaining aggravating circumstances.
In addition to the horrific nature of the crime, the evidence presented at trial revealed that Donna had secured a protective order in March 1999 against Hernandez as a result of his repeated threats to kill her.[23] The protective order was in effect at the time of Donna’s death in October 1999.[24] And approximately two weeks before the murder, Hernandez conveyed to a friend that he wanted to kill Donna, their daughter, and himself.[25] Moreover, inflicting this brutal attack on Donna in clear view of his three-year-old daughter and then kidnapping her is beyond the pale. The trauma young Ana suffered as a result of witnessing her mother’s attack left an indelible mark on her.[26] Therefore, we are convinced beyond a reasonable doubt that the jury would have sentenced Hernandez to death in the absence of the erroneous aggravating circumstance. Accordingly, we affirm Hernandez’s death sentence.

*987
Claims of ineffective assistance of trial counsel

Hernandez argues that the district court erred by denying numerous claims of ineffective assistance of trial counsel. We disagree.
Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in Strickland v. Washington.[27] To state a claim of ineffective assistance of counsel sufficient to invalidate a judgment of conviction under Strickland, a petitioner must demonstrate (1) that counsel’s performance was deficient in that it fell below an objective standard of reasonableness and (2) prejudice such that counsel’s errors were so severe that they rendered the jury’s verdict unreliable.[28] A petitioner must demonstrate “the disputed factual allegations underlying his ineffective-assistance claim by a preponderance of the evidence.”[29]
Before considering the individual claims of ineffective assistance of counsel, we address Hernandez’s argument that he need not demonstrate prejudice under the second prong of the Strickland test and is instead entitled to a presumption of prejudice. Specifically, Hernandez argues that counsel’s actions affected the overall integrity of the adversarial process and should therefore be analyzed under the presumption-of-prejudice standard articulated in United States v. Cronic.[30] Cronic held that prejudice can be presumed when “counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing.”[31] Hernandez did not provide this court with the complete trial transcript in his appendix, so we are unable to fully assess whether counsel’s actions met this standard. The appendix submitted to this court, however, reveals that counsel filed numerous pretrial motions, some of which proved successful. We conclude that Hernandez has not shown that counsel “fail[ed] to subject the prosecution’s case to meaningful adversarial testing.”[32] Accordingly, the Cronic presumption-of-prejudice standard is inappropriate here; Hernandez must satisfy both prongs of the Strickland test.
Whether a petitioner has demonstrated ineffective assistance of counsel under Strickland presents a mixed question of fact and law that is subject, in part, to independent review.[33] Nonetheless, this *988 court will give deference to a district court’s purely factual findings regarding an ineffective-assistance-of-counsel claim.[34] With these standards in mind, we turn to Hernandez’s claims of ineffective assistance of counsel.

Failure to challenge statements as violating Miranda

Hernandez argues that the district court erred in denying his claim that counsel were ineffective for failing to address whether Miranda[35] barred admission of the statements he made to Officer Swoboda and police detective Tom Allen when he was arrested. This claim lacks merit.
Miranda affects the admissibility of statements made during “in-custody interrogation.”[36] “Custody” is defined as “‘formal arrest or restraint on freedom of movement’ of the degree associated with a formal arrest.”[37] “Interrogation” means explicit questioning as well as “words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.”[38]
After Officer Swoboda stopped Hernandez for speeding, Hernandez exited his car, said, “Just shoot me, just kill me,” and told his daughter he was sorry. Although Hernandez was subsequently handcuffed due to his erratic behavior, there is no indication that at the time he made these comments he had been arrested or restrained or that Officer Swoboda suspected him of anything other than speeding. Hernandez only refers to one question asked him by a police officer: when Officer Swoboda noticed cuts on Hernandez’s face and hand, he asked Hernandez what happened. Hernandez responded that he had fought with his ex-wife. Through his police computer, Officer Swoboda learned of Donna’s restraining order against Hernandez. Deducing that a domestic violence incident had occurred, Officer Swoboda requested officers be sent to Donna’s residence, where her body was discovered. Suspecting Hernandez of driving under the influence of alcohol, Hernandez was administered a horizontal gaze nystagmus test, which he failed. Officer Swoboda placed Hernandez under arrest, after which Hernandez said, “I killed her” and “I killed them.” Offi *989 cer Swoboda advised Hernandez of his Miranda rights, and Hernandez continued to say “I killed her” and “I killed them.”
Applying the definitions of “custody” and “interrogation,” explained above, Hernandez’s statements were not made while he was in custody or subject to interrogation. Hernandez wholly fails to explain how any of these statements were made in violation of Miranda. We discern nothing in Officer Swoboda’s words or actions that were reasonably likely to elicit an incriminating response. Because a motion to suppress any of the statements described above would not have succeeded, we conclude that the district court correctly ruled that trial counsel were not ineffective for failing to make such a motion.[39]

Counsel’s concession of Hernandez’s guilt

Hernandez argues that the district court erred by denying his claim that trial counsel were ineffective for conceding his culpability for Donna’s death without obtaining his consent. Hernandez relies on Jones v. State[40] to support his claim. In Jones, a death penalty case, we concluded that counsel was ineffective for conceding Jones’ guilt to second-degree murder in the penalty phase without Jones’ consent. We emphasized, however, “that our decision [was] limited to the situation present [in Jones], where counsel undermined his client’s testimonial disavowal of guilt during the guilt phase of the trial,”[41] Here, Hernandez’s claim that he did not consent to counsel’s concession of guilt is belied by the record and therefore lacks merit.[42]
Counsel, Hernandez, and the district court met in chambers, without the State, to discuss the decision to concede culpability to second-degree murder. At that hearing, counsel explained the strategy of conceding guilt. The district court judge admonished counsel, in Hernandez’s presence, that she felt it unwise for any defense counsel to admit guilt of anything in front of a jury because it relieves the State of its burden of proof. The district court also reminded counsel that there can be unanticipated changes in the strength and weakness of a case during trial. Counsel explained that due to the physical evidence tying Hernandez to the crime, they felt it would be “foolish” to argue to the jury that Hernandez was not culpable for Donna’s death. Counsel further indicated *990 that the defense’s goal was to gain credibility with the jury and thereby hopefully avoid a death sentence. The district court twice asked Hernandez if he understood that counsel would admit that he was culpable in Donna’s death to try to avoid a first-degree murder conviction, and Hernandez twice responded that he understood and agreed with this strategy.
A concession of guilt involves the waiver of a constitutional right that must be voluntary and knowing.[43] Hernandez argues that his “apparent consent” was involuntary and unknowing due to counsel’s repeated efforts to persuade him to accept a plea offer while also discussing with him the defense strategy of conceding culpability at trial. At the post-conviction evidentiary hearing, counsel testified that plea discussions with Hernandez were contentious. While the plea discussions may have been intense, it would have been ineffective for counsel not to discuss with Hernandez pending offers or trial strategy that required his consent. Further, nothing in the record before us shows that Hernandez’s consent was coerced. Accordingly, we conclude that Hernandez failed to demonstrate that his counsel’s actions rendered his consent to the concession of culpability involuntary or unknowing.
We take this opportunity, however, to address the proper procedure when a defense strategy at trial includes a concession of guilt. As noted above, in Jones, we held that counsel was ineffective for conceding his client’s guilt in closing argument without obtaining the client’s consent and after the client had testified and proclaimed his innocence.[44] Jones, however, did not explain the inquiry necessary to determine the voluntariness of a defendant’s consent to concede guilt to an offense. At a minimum, the district court should canvass the defendant outside the presence of the State and the jury to determine whether the defendant has consented to the concession of guilt and that the defendant’s consent is voluntary and knowing. During the canvass, the district court must ensure and accordingly make findings in the trial record that the defendant understands the strategy behind conceding guilt or degree of guilt to the subject charges. Additionally, the district *991 court must inform the defendant that conceding guilt relieves the State of its burden to prove an offense and that the defendant has the right to challenge the State’s evidence.[45] The hearing conducted in Hernandez’s case satisfied these concerns.

Failure to communicate and adequately investigate case

Hernandez contends that the district court erred by denying his claim that counsel were ineffective for failing to adequately communicate with him and investigate his case.[46] At the evidentiary hearing, both counsel testified that they spoke with Hernandez on several occasions. One of his trial attorneys testified that he visited Hernandez in jail many times and spent numerous hours with him discussing the case prior to trial. Hernandez failed to state what additional communication was needed or demonstrate that additional communication with either counsel would have changed the outcome of his trial. Hernandez also failed to adequately support his claim that counsel were ineffective for failing to investigate by consulting with appropriate experts and exploring mitigation evidence, including Hernandez’s childhood, mental and psychological condition, and “other relevant factors.” However, Hernandez did not identify what mitigation evidence additional investigation would have revealed. He also claimed that counsel was ineffective for not calling a neuropsychologist retained by the defense. However, Hernandez failed to articulate what the neuropsychologist would have testified to in mitigation that would have changed the result of the proceeding. Consequently, we conclude that the district court did not err by denying this claim.[47]

*992
Failure to challenge competency

Hernandez argues that the district court erred by denying his claim that counsel were ineffective for failing to challenge his competency to stand trial. Hernandez’s explanation of this claim is cursory at best. At the post-conviction evidentiary hearing, co-counsel at trial testified that the defense elected not to call the defense’s expert neuropsychologist at trial because his testimony would have been more harmful than helpful. Although the expert’s report indicated that Hernandez was unable to reason properly and was under profound emotional turmoil at the time of Donna’s attack and his subsequent arrest, the expert also opined that Hernandez displayed deceptive behavior, denied culpability for the crime despite overwhelming evidence to the contrary, and had no mental health or psychological problems. Hernandez nonetheless argues that the expert’s observations that he could not reason properly and was suffering emotional distress evinced his “lack of competence, and inability to stand trial.’ ’
A defendant is incompetent when he is “not of sufficient mentality to be able to understand the nature of the criminal charges against him,” rendering him unable to assist in his defense.[48] Nothing in Hernandez’s submissions to this court suggests that counsel had reason to believe that he was incompetent to stand trial. Nor has he shown that he was incompetent to stand trial. Therefore, we conclude that the district court did not err by denying this claim.

Failure to seek a change of venue

Hernandez contends that the district court erred by denying his claim that counsel were ineffective for not seeking a change of venue in light of the publicity his case received. At the post-conviction evidentiary hearing, counsel testified that the media attention given Hernandez’s case was not excessive and that the defense was able to seat twelve jurors and alternate jurors who were not influenced by the publicity. Further, nothing in Hernandez’s submissions establish that he was unable to secure an impartial jury or that the publicity was so intense that “even an impartial jury would be swayed by the considerable pressure of public opinion.’ ’[49] Therefore, we conclude that the district court did not err by *993 denying this claim because Hernandez failed to demonstrate that counsel’s performance was deficient in this respect or that he suffered prejudice.[50]

Failure to object to voluntary intoxication jury instruction

Hernandez argues that the district court erred by denying his claim that counsel were ineffective for not challenging the voluntary intoxication jury instruction as unconstitutionally overbroad. The district court instructed that “[i]f a person premeditates and deliberates upon the crime of Murder and forms a specific intent to commit that crime and thereafter becomes intoxicated, then such intoxication will not serve as a defense in order to reduce the degree of the murder.” Hernandez challenged this instruction on direct appeal. We concluded that “[although [the] instruction may [have been] too broadly stated,” it was not plainly erroneous.[51] Even assuming counsel should have objected to the challenged instruction on the ground Hernandez now tenders, we conclude that he has not shown prejudice. The jury was instructed that it could consider Hernandez’s intoxication when determining his purpose, motive, or intent if such purpose, motive, or intent was a necessary element for a particular degree of crime.[52] Thus, the jury was advised that intoxication could be relevant to the degree of murder.
Moreover, Hernandez has failed to establish that the instruction was intrinsically incorrect or unconstitutionally overbroad. Although evidence of intoxication may reduce the degree of murder because intoxication may affect the ability to form the requisite intent, once the requisite intent is conceived, subsequent intoxication has no effect on the original formation of the intent to commit an offense.[53]
*994 Because Hernandez failed to show that counsel were ineffective for not objecting to the constitutionality of the challenged instruction, we conclude that the district court did not err by denying this claim.

Miscellaneous claims of ineffective assistance of counsel

Hernandez asserts that the district court erred by denying his claims that counsel were ineffective for failing to file motions to: (1) challenge the racial composition of the jury venire, (2) challenge matters related to the questioning of jurors during voir dire, (3) bifurcate the penalty hearing, (4) dismiss the notice of intent to seek the death penalty because probable cause for the aggravating circumstances was not established at the preliminary hearing and the aggravating circumstances were not charged in the information, (5) exclude evidence of uncharged misconduct, (6) seek exclusion of hearsay statements, (7) compel compliance with Brady v. Maryland,[54] (8) prohibit the use of a vague deadly weapon enhancement instruction, and (9) dismiss the deadly weapon enhancement as unconstitutionally vague. Hernandez also complains that his counsel failed to ensure that all bench conferences were properly recorded and that constitutional evidentiary standards and legal procedures for the admission of DNA evidence were followed. However, Hernandez has not provided adequate facts or argument establishing that his counsel were deficient or, assuming any deficiency, that he was prejudiced by counsel’s omissions. Therefore, we conclude that the district court did not err by denying these claims.
Hernandez further argues that the district court erroneously denied his claims that his counsel were ineffective for failing to file motions to: (1) dismiss the notice of intent to seek the death penalty because Nevada’s death penalty scheme does not narrow the class of persons eligible for the death penalty, (2) preclude prosecutorial misconduct, and (3) dismiss the kidnapping charge as legally and factually impossible. As with the claims listed above, Hernandez failed to provide adequate facts or argument establishing that his counsel were deficient. Additionally, we concluded on direct appeal that each of the underlying issues in these three claims lacked merit.[55] Therefore, even assuming any omission was deficient, Hernandez did not demonstrate prejudice. Consequently, we conclude that the district court did not err by denying these claims.[56]
Hernandez also argued that his counsel were ineffective during the penalty hearing for failing to object to prosecutorial misconduct *995 and improper jury instructions and aggravating circumstances. However, he wholly failed to explain the bases for these claims. Therefore, we conclude that the district court did not err by denying these claims.

Claims of ineffective assistance of appellate counsel

Hernandez contends that the district court erred by denying his claim that appellate counsel was ineffective for failing to raise issues he specifically requested be brought forth on direct appeal and for not offering any excuse for the omissions other than this court’s order requiring appellate counsel to reduce the length of her opening brief. Hernandez neglects, however, to identify what additional issues he desired to be raised in his direct appeal. Further, during the post-conviction evidentiary hearing, appellate counsel testified that in an effort to reduce her brief to the length allowed by this court, she eliminated claims that were less likely to prevail on appeal. Nothing in appellate counsel’s testimony indicated that she excluded a claim from the reduced opening brief that she considered likely to prevail on appeal.[57] Because this testimony is supported by the record, we conclude that the district court did not err by denying this claim.

CONCLUSION

We conclude that Nevada’s definition of torture murder sufficiently narrows the class of persons eligible for the death penalty; therefore, McConnell does not operate to invalidate the torture aggravating circumstance. However, McConnell requires us to strike the burglary aggravating circumstance. The mitigation evidence Hernandez presented set against the horrific and senseless nature of the murder compels us to conclude beyond a reasonable doubt that a jury would have found him death eligible and imposed a death sentence in the absence of the erroneous aggravating circumstance. We further conclude that the district court did not err in rejecting Hernandez’s other post-conviction claims. We therefore affirm the district court’s order denying post-conviction relief.
Gibbons, C. L, Hardesty, Parraguirre, Douglas and Saitta, JJ., concur.

120 Nev. 1043, 102 P.3d 606 (2004).

Hernandez v. State, 118 Nev. 513, 50 P.3d 1100 (2002).

 120 Nev. at 1069, 102 P.3d at 624.

 Bejarano v. State, 122 Nev. 1066, 146 P.3d 265 (2006).

 The State also alleged as an aggravating circumstance that Donna’s murder was committed during a kidnapping; however, the jury rejected this aggravating circumstance.

 120 Nev. at 1063, 102 P.3d at 620-21 (quoting Zant v. Stephens, 462 U.S. 862, 877 (1983)).

 484 U.S. 231 (1988).

McConnell, 120 Nev. at 1064, 102 P.3d at 621 (quoting Lowenfield., 484 U.S. at 246).

Id. at 1065, 102 P.3d at 621-22.

Domingues v. State, 112 Nev. 683, 702 & n.6, 917 P.2d 1364, 1377 & n.6 (1996).

We have rejected other arguments seeking to extend McConnell’s holding beyond the scope of felony murder. See Blake v. State, 121 Nev. 779, 794, 121 P.3d 567, 577 (2005) (rejecting argument that McConnell should apply to invalidate preventing-a-lawfiil-arrest aggravating circumstance because although aggravator may constitutionally narrow class of persons eligible for death penalty in theory, ‘ ‘the practical effect is so slight as to render the aggravator unconstitutional’ ’).

McConnell, 120 Nev. at 1065-66, 102 P.3d at 622.

 Id. at 1066, 102 P.3d at 622 (quoting Ford v. State, 99 Nev. 209, 215, 660 P.2d 992, 995 (1983)).

 See Collman v. State, 116 Nev. 687, 714-15, 7 P.3d 426, 443-44 (2000) (noting that “malice is not subsumed by willfulness, deliberation, and premeditation” and that first-degree murder by enumerated means still requires State to prove malice); see also NRS 200.020 (“1. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. 2. Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.”).

 See Clemons v. Mississippi, 494 U.S. 738, 741 (1990); Browning v. State, 120 Nev. 347, 363 , 91 P.3d 39, 51 (2004).

 Browning, 120 Nev. at 364, 91 P.3d at 51.

 Hernandez v. State, 118 Nev. 513, 519, 50 P.3d 1100, 1104-05 (2002).

Id. at 519, 50 P.3d at 1105.

Id.

Id. at 519, 50 P.3d at 1104-05.

Id. at 519, 50 P.3d at 1105.

Id.

Id. at 517, 50 P.3d at 1103-04.

Id. at 517, 50 P.3d at 1104.

Id.

Id. at 520, 50 P.3d at 1105.

466 U.S. 668 (1984); accord Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984).

Strickland, 466 U.S. at 687.

Means v. State, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004).

466 U.S. 648 (1984).

Id. at 659.

Id.

Riley v. State, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).

Id.

Miranda v. Arizona, 384 U.S. 436 (1966).

Id. at 445.

California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)); see also Alward v. State, 112 Nev. 141, 154, 912 P.2d 243, 252 (1996), overruled in part on other grounds by Rosky v. State, 121 Nev. 184, 111 P.3d 690 (2005).

Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

To the extent Hernandez contends that his appellate counsel was ineffective for failing to raise this matter on direct appeal, we conclude that he failed to demonstrate that it had a reasonable probability of success. See Kirksey v. State, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996).

110 Nev. 730, 877 P.2d 1052 (1994).

Id. at 739, 877 P.2d at 1057.

See Hargrove v. State, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984).

See State v. Perez, 522 S.E.2d 102, 106 (N.C. Ct. App. 1999) (stating that “[d]ue process requires that [consent to a concession of guilt] must be given voluntarily and knowingly by the defendant after full appraisal of the consequences”); see generally Gallego v. State, 117 Nev. 348, 368, 23 P.3d 227, 241 (2001) (noting that United States Supreme Court has held that “a valid waiver of a fundamental constitutional right ordinarily requires ‘an intentional relinquishment or abandonment of a known right or privilege’” (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938))).

110 Nev. at 738, 877 P.2d at 1057.

See Perez, 522 S.E.2d at 106 (stating that defendant must be given full appraisal of consequences of conceding guilt before his consent to this trial strategy will be considered to be voluntary and knowing).

Hernandez’s claim that the district court improperly denied his pretrial motion for new counsel was waived by his failure to raise it on direct appeal. See NRS 34.810(l)(b)(2), (3). In an attempt to demonstrate good cause for this failure, he cites Stewart v. Warden, 92 Nev. 588, 555 P.2d 218 (1976), for the proposition that appellate counsel’s “unexplained omission” of a claim could constitute good cause sufficient to overcome waiver of that claim. Here, appellate counsel did explain her omission; she testified at the evidentiary hearing that she felt this issue was less likely to prevail and she omitted it in order to conform her brief to this court’s order on the length of her brief. Further, Stewart was decided under a repealed statutory provision that did not require a petitioner to show prejudice. See 1973 Nev. Stat., ch. 349, § 7, at 438 (codified at NRS 177.375, repealed by 1991 Nev. Stat., ch. 44, §§ 31, 33, at 92). Hernandez’s petition was filed pursuant to NRS 34.720-.830, which requires a petitioner to show prejudice as well as good cause. NRS 34.810(3). We conclude that Hernandez failed to demonstrate prejudice.

See Hargrove, 100 Nev. at 502, 686 P.2d at 225.

Hill v. State, 114 Nev. 169, 176, 953 P.2d 1077, 1082 (1998) (internal quotation and citations omitted); NRS 178.400.

Hanley v. State, 83 Nev. 461, 464, 434 P.2d 440, 442 (1967).

 To the extent Hernandez argues that his death sentence is unconstitutional because of overwhelming pretrial publicity, this is a claim appropriate for direct appeal, and he has not demonstrated good cause for his failure to raise it previously or prejudice. See NRS 34.810(l)(b)(2), (3).

 Hernandez v. State, 118 Nev. 513, 527, 50 P.3d 1100, 1110 (2002).

 See NRS 193.220 (“No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining the purpose, motive or intent.”).

 To the extent that Hernandez argues that the district court erred in giving the challenged instruction, we considered this matter on appeal and our ruling is the law of the case. See Pellegrini v. State, 117 Nev. 860, 879, 34 P.3d 519, 532 (2001).

373 U.S. 83 (1963).

Hernandez, 118 Nev. at 524-26, 534-35, 50 P.3d at 1107-09, 1115.

We further reject Hernandez’s claim that all of these claims considered cumulatively established ineffective assistance of counsel. Accordingly, we conclude that the district court did not err by denying this claim.

See Jones v. Barnes, 463 U.S. 745, 751 (1983) (holding that appellate counsel is not required to raise every nonfrivolous issue on appeal).