An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROGER RANDOLPH,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 60993

FILED

JAN 3 0 2015



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon, and discharging a firearm at or into a structure, vehicle, aircraft, or watercraft. Eighth Judicial District Court, Clark County; J. Charles Thompson, Judge.

Randolph argues that (1) the district court's failure to file Randolph's post-trial pro se motions violated his constitutional rights; (2) there was insufficient evidence to sustain his first-degree murder conviction; (3) the jury instructions were improper; (4) expert testimony violated his rights under the Confrontation Clause; (5) the district court erred in admitting an autopsy photograph; (6) the district court erred in denying his motion to strike the death penalty; (7) the district court did not properly address Randolph's motions to substitute counsel; (8) the district court did not properly canvass Randolph about his attorney's admission of guilt at trial; (9) the State committed prosecutorial

SUPREME COURT
OF
NEVADA

(O) 1947A

15-03297

misconduct; and (10) the jury selection process violated Randolph's constitutional rights. We disagree.[1]

*Post-trial pro se motions*

Randolph argues that his due process rights were violated by the district court when it declined to file his pro se motions to set aside the verdict, enter a judgment of acquittal, and for a new trial, pursuant to EDCR 3.70.

> EDCR 3.70 states:
>
> Except as may be required by the provisions of NRS 34.730 to 34.830, inclusive, all motions, petitions, pleadings or other papers delivered to the clerk of the court by a defendant who has counsel of record will not be filed but must be marked with the date received and a copy forwarded to that attorney for such consideration as counsel deems appropriate. This rule does not apply to applications made pursuant to Rule 7.40(b)(2)(ii).

Criminal defendants represented by counsel typically may not file pro se motions. *United States v. Gallardo*, 915 F. Supp. 216, 218 n.1 (D. Nev. 1995); *see also Carter v. State*, 713 So. 2d 1103, 1104 (Fla. Dist. Ct. App. 1998). The rule is "an aspect of the doctrine that an accused can proceed by counsel or *pro se* but not in both capacities at the same time." *People v. Neal*, 675 N.E.2d 130, 131 (Ill. App. Ct. 1996); *State v. Muse*, 637 S.W.2d 468, 470 (Tenn. Crim. App. 1982). Other jurisdictions have similar limitations on the filing of pro se motions by represented criminal

---

[1]The parties are familiar with the facts and procedural history of this case and we do not recount them further except as is necessary for our disposition.

defendants. *See, e.g.,* Mont. R. App. P. 10(1)(c); N.M. Dist. Ct. R. Crim. P. 5-103(E).

This court has previously considered EDCR 3.70 in *Craine v. Eighth Judicial Dist. Court,* 107 Nev. 554, 556-57, 816 P.2d 451, 452 (1991). In *Craine* we held that EDCR 3.70 does not bar "notices of appeal or other documents associated with an appeal that are submitted for filing by persons acting in proper person." *Id.* at 557, 816 P.2d at 452. This court reasoned that "[t]he right to appeal is basic to the fundamental notions of fairness that underlie our judicial system," and it could not "allow the operation of a local rule of procedure or the actions of a court clerk to impair the right of any person to prosecute an appeal to this court." *Id.* at 556, 816 P.2d at 452.

Similarly, the United States Court of Appeals for the Fifth Circuit in *Tarter v. Hury,* stated that:

> [a]s long as a criminal defendant is represented by counsel, he will be able to present matters for decision to the court through motions filed by his attorney. Therefore, in the absence of extraordinary circumstances . . . due process does not require that a criminal defendant be permitted to file every pro se motion he wishes to submit in addition to his attorney's motions.

646 F.2d 1010, 1014 (5th Cir. 1981). However, that court further noted that "extraordinary circumstances may exist in a particular case so that the refusal to docket a pro se motion could deprive a defendant of an opportunity to present an issue to the court." *Id.*

Here, we conclude that Randolph's argument lacks merit. A motion to set aside the verdict and enter a judgment of acquittal and a motion for a new trial are neither the equivalent of a notice of appeal nor extraordinary circumstances and are not part of the same "fundamental

notions of fairness that underlie our judicial system" that this court relied on in *Craine*. 107 Nev. at 556-57, 816 P.2d at 452. Thus, the operation of EDCR 3.70 did not violate Randolph's due process rights.

*Sufficiency of the evidence*

The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotations omitted). In rendering its decision, the jury is tasked with "assess[ing] the weight of the evidence and determin[ing] the credibility of witnesses." *Id.* at 202-03, 163 P.3d at 414 (internal quotations omitted). A jury is free to rely on both direct and circumstantial evidence in returning its verdict. *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980). This court has consistently held that "circumstantial evidence may constitute the sole basis for a conviction." *Canape v. State*, 109 Nev. 864, 869, 859 P.2d 1023, 1026 (1993); *see also Deveroux v. State*, 96 Nev. 388, 391, 610 P.2d 722, 724 (1980).

Randolph argues that the evidence in his case was insufficient to prove "willfulness, deliberation, and premeditation beyond a reasonable doubt." Randolph cites *Valdez v. State*, 124 Nev. 1172, 1196, 196 P.3d 465, 481 (2008), as support for his argument that the undisputed evidence of his impaired cognitive function negated the elements of willfulness, deliberation, and premeditation.[2]

_____

[2]Randolph also argues that the prosecution's evidence of intent to kill was insufficient because no one saw Randolph point the gun at the decedent and fire, and because the coroner only found a partial bullet in

*continued on next page...*

Randolph's citation to *Valdez* is misplaced. Although this court did conclude in *Valdez* that the "expert witness testimony that [the defendant] suffered from cognitive impairment that limited his ability to exercise good judgment and control his impulses," made the evidence of guilt "not overwhelming," that analysis was in the context of cumulative error. 124 Nev. at 1196, 196 P.3d at 481. Further, this court also specifically stated that the evidence put forth by the prosecution in *Valdez* was sufficient for a first-degree murder conviction. *Id.* Therefore, there may be sufficient evidence to convict a defendant of first-degree murder, even when the defendant proffers evidence of impaired cognitive function.

*Jury instructions*

Randolph argues that the district court erred when it failed to include Randolph's requested instructions and failed to instruct the jury on Randolph's theory of defense.

*Proposed jury instructions*

Randolph's proposed jury instructions provided separate jury instructions defining willfulness, deliberation, and premeditation rather than the instructions combining the definitions as set forth in *Byford v. State,* 116 Nev. 215, 236-37, 994 P.2d 700, 714-15 (2000). Randolph also contends that the district court erred by combining the definitions of premeditation and deliberation in jury instructions 8 and 9. We disagree.

---

*...continued*

the decedent, suggesting Randolph only meant to scare the decedent when he fired. We conclude Randolph's arguments on these issues lack merit. Multiple witnesses heard Randolph threaten the decedent and saw him walk toward the decedent while shooting the gun.

First of all, "[t]he district court has broad discretion to settle jury instructions." *Crawford v. State,* 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). And we review a district court's decision to give or reject a proposed jury instruction for "an abuse of discretion or judicial error." *Id.* "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of the law or reason." *Jackson v. State,* 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001). However, we review whether an instruction was an accurate statement of law de novo. *Funderburk v. State,* 125 Nev. 260, 263, 212 P.3d 337, 339 (2009).

This court has set forth specific jury instructions defining willfulness, deliberation, and premeditation for purposes of a first degree murder charge. *See Byford,* 116 Nev. at 236-37, 994 P.2d at 714-15. Here, Randolph argues separate jury instructions were necessary because the jury must find each element separately beyond a reasonable doubt. However, as proscribed in *Byford,* the jury instructions already specify that "[a]ll three elements—willfulness, deliberation and premediation—must be proven beyond a reasonable doubt before an accused can be convicted of first-degree murder." We conclude separate instructions for each element are not necessary. Thus, the district court did not abuse its discretion when it refused to give further instructions because the district court gave the required *Byford* instructions.

*Theory of defense*

Randolph also argues that the district court erred in failing to instruct the jury on his theory of defense that the state failed to prove the elements of premeditation and deliberation.

"A defendant has the right to have the jury instructed on [his or her] theory of the case as disclosed by the evidence, no matter how weak

or incredible that evidence may be." *Davis v. State*, 130 Nev. ___, ___, 321 P.3d 867, 871 (2014) (alterations in original) (internal quotations omitted). "If a defense theory of the case is supported by some evidence which, if believed, would support a corresponding jury verdict, failure to instruct on that theory totally removes it from the jury's consideration and constitutes reversible error." *Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983). However, "[w]here the district court refuses a jury instruction on defendant's theory of the case that is substantially covered by other instructions, it does not commit reversible error." *Earl v. State*, 111 Nev. 1304, 1308, 904 P.2d 1029, 1031 (1995).

In the present case, the district court gave jury instructions that supported Randolph's theory of defense, although it refused to give the specific instructions Randolph proposed. Accordingly, there was no error.

*Confrontation Clause*

Randolph argues that the district court violated his rights under the Confrontation Clause when it permitted testimony by a forensic pathologist rather than the coroner who performed the autopsy and wrote the report. We conclude that the testimony of Dr. Lisa Gavin, a forensic pathologist, in lieu of the coroner who conducted the autopsy, did not implicate the Confrontation Clause because Dr. Gavin offered testimony as to her own opinions as an expert witness and not as to the opinions of the coroner. Further, even if Dr. Gavin's testimony implicated the Confrontation Clause, any error was harmless.

To the extent that Randolph challenges Dr. Gavin's testimony because Dr. Gavin lacked personal knowledge of the autopsy, we conclude that Randolph's claim lacks merit. Dr. Gavin testified as an expert witness to matters "within the scope of [her specialized] knowledge," NRS

50.275, based on facts or data "made known to the expert at or before the hearing," NRS 50.285(1), that are "of a type reasonably relied upon by experts in forming opinions or inferences" and therefore "need not be admissible in evidence," NRS 50.285(2). Here, the vast majority of Dr. Gavin's testimony reflected her independent interpretation of photographs taken at the autopsy and therefore this testimony was properly-admissible expert opinion.

Further, even assuming the autopsy report was testimonial hearsay, and therefore that Dr. Gavin's testimony based on that report violated Randolph's confrontation rights, we conclude that any error from its admission was harmless. Dr. Gavin's testimony was not pivotal to the outcome of this case in that several witnesses testified that they heard Randolph threaten the decedent. Multiple witnesses testified at trial as to watching Randolph walk toward the decedent while shooting the gun. Another witness also testified that he told detectives that he saw the decedent get shot in the hip.

*Prejudicial error by permitting exhibit 67*

Randolph argues that the district court erred when it permitted the jury to view exhibit 67, an autopsy photo, because it was irrelevant and gruesome.

"Admission of evidence is within the trial court's sound discretion; this court will respect the trial court's determination as long as it is not manifestly wrong." *Colon v. State*, 113 Nev. 484, 491, 938 P.2d 714, 719 (1997). Generally, "[p]hotographic evidence is admissible unless the photographs are so gruesome as to shock and inflame the jury." *Wesley v. State*, 112 Nev. 503, 513, 916 P.2d 793, 800 (1996). The photographs must also be relevant; relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to

Supreme Court
of
Nevada

(O) 1947A

8

the determination of the action more or less probable than it would be without the evidence." NRS 48.015.

Here, the district court admitted the photograph because it "felt . . . that the jury ought to have a sense of the [decedent] appearance-wise." The district court further noted that "[t]here's no blood or wounds [or] anything of consequence, so [it did not] think [it was] unduly gory." Although the reasoning put forth by the district court may not strongly support the photograph's relevancy, we conclude the photo was not patently gruesome and therefore, not prejudicial. Thus, the district court's admission of the photograph was not "manifestly wrong." *Colon*, 113 Nev. at 491, 938 P.2d at 719.

*Failure to strike the death penalty notice at the* Atkins[3] *hearing*

Randolph argues that the district court should have stricken the death penalty because the Eighth Amendment prohibits the State from executing an intellectually disabled person.[4] The State counters that the issue of intellectual disability is moot because Randolph agreed to let a judge sentence him in exchange for the death penalty being removed as a sentencing option. "When a live controversy become[s] moot by the occurrence of subsequent events, we will not make legal determinations that cannot affect the outcome of the case." *Stephens Media, LLC v. Eighth Judicial Dist. Court*, 125 Nev. 849, 858, 221 P.3d 1240, 1246-47

---

[3]*Atkins v. Virginia*, 536 U.S. 304 (2002); *see also* NRS 174.098.

[4]Randolph also argues that the death penalty is unconstitutional. We need not consider the issue because he did not put forth a cogent argument and "[i]t is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court." *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

Supreme Court
OF
Nevada

(O) 1947A

(2009) (alteration in original) (internal quotation marks omitted). Because the State and Randolph entered into a stipulation that removed the death penalty as a sentencing option, we conclude the issue of Randolph's intellectual disability is moot.

*Randolph's motions for new counsel*

Randolph argues that the district court erred by not properly conducting an evidentiary hearing on his motions for a new attorney.[5] To determine if the district court abused its discretion in denying a motion for substituted counsel, we examine: "'(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion.'"[6] *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004) (quoting *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)). "[I]f the complete collapse of the attorney-client relationship is evident, a refusal to substitute counsel violates a defendant's Sixth Amendment rights." *Id.* at 969, 102 P.3d at 576. However, "[a]bsent a showing of adequate cause, a defendant is not entitled to reject his court-appointed counsel and request substitution of other counsel at public expense." *Id.* at 968, 102 P.3d at 576. "We review the denial of a motion for substitution of counsel for abuse of discretion." *Id.*

---

[5]Randolph also argues that the district court erred by not directly addressing his request to represent himself. After careful consideration, we conclude Randolph's arguments on this issue lack merit.

[6]Randolph further argues that the district court did not hold a *Young v. State*, 120 Nev. 963, 102 P.3d 572 (2004), hearing until after he made motions and "shortly before trial." However, we conclude this argument lacks merit because the trial occurred over a year after the *Young* hearing.

Under the specific facts of this case, we cannot conclude that the district court's denial of Randolph's motion for new counsel or decision not to hold an evidentiary hearing was an abuse of discretion.

*The district court's canvass of Randolph*

Randolph argues that the district court's questioning of him before trial was not a sufficient canvass to show that he knowingly and voluntarily consented to an admission of guilt. Randolph did not object to the canvass, thus this court will review his claim for plain error. *Armenta-Carpio v. State*, 129 Nev. ___, ___, 306 P.3d 395, 397 (2013).

Pursuant to *Hernandez v. State*, "[a]t a minimum, the district court should canvass the defendant outside the presence of the State and the jury to determine whether the defendant has consented to the concession of guilt and that the defendant's consent is voluntary and knowing." 124 Nev. 978, 990, 194 P.3d 1235, 1243 (2008), *overruled by Armenta-Carpio v. State*, 129 Nev. ___, 306 P.3d 395 (2013).

Here, once the district court became aware that Randolph's attorney planned to concede guilt, it had the State leave the room and asked Randolph about his attorney's planned concession. The district court repeated the concession that Randolph's attorney planned on making and asked if he understood, had a problem with counsel's argument, had any questions for the court, and whether he was satisfied that he understood. Randolph repeated that he understood, he did not have a problem with the argument, and that he did not have any questions for the court. Thus, we conclude that the district court did not commit plain error.

*Prosecutorial misconduct*

Randolph argues that the prosecutor committed misconduct during his closing statement because he characterized Randolph's expert witness as a liar. We disagree.

In reviewing claims of prosecutorial misconduct, this court must first determine if the conduct was improper and, if so, whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188-89, 196 P.3d 465, 476-77 (2008). "[T]his court will not reverse a conviction based on prosecutorial misconduct if it was harmless error. . . . If the error is not of constitutional dimension, [this court] will reverse only if the error substantially affects the jury's verdict." *Id.* at 1188-89, 196 P.3d at 476. But, "[i]f the error is of constitutional dimension, then . . . [this court] will reverse unless [it is shown], beyond a reasonable doubt, that the error did not contribute to the verdict." *Id.* at 1189, 196 P.3d at 476. "The [prosecutor's] statements should be considered in context . . . ." *Thomas v. State*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004).

"[P]rosecutorial misconduct results when a prosecutor's statements so infect[ ] the proceedings with unfairness as to make the results a denial of due process." *Browning v. State*, 124 Nev. 517, 533, 188 P.3d 60, 72 (2008) (internal quotations omitted) (alterations in original). It is improper for the prosecutor to "characterize a witness as a liar," or add his own opinion about the guilt of the accused. *Ross v. State*, 106 Nev. 924, 927, 803 P.2d 1104, 1105 (1990); *Yates v. State*, 103 Nev. 200, 203, 734 P.2d 1252, 1254 (1987).

Randolph argues that the prosecutor insinuated that Dr. Kern was a liar. Randolph further takes issue with three comments from the prosecutor: first, his statement that "there is no not guilty by mental retardation;" second, when the prosecutor stated that "[Dr.] Kern was paid

and retained by defense counsel to give them an opinion [on Randolph's mental retardation];" and third, when the prosecutor commented and argued that "[Dr. Kern] tailored his testimony to fit the defense's perspective and defense case in this case." Randolph further argues that the prosecutor mischaracterized Dr. Kern's testimony.

We conclude that Randolph's argument lacks merit. At no point did the prosecutor say that Dr. Kern was a liar or a fraud. The prosecutor did state that "[Dr.] Kern was paid and retained by defense counsel to give them an opinion [on Randolph's mental retardation]." When Randolph objected, the prosecutor explained that his "comments and . . . argument is that [Dr. Kern] certainly tailored his testimony to fit the defense's perspective and defense case in this case." The prosecutor "may argue the evidence and inferences before the jury[, but] . . . [the prosecutor] may not heap verbal abuse on a witness nor characterize a witness as a perjurer or a fraud." *Yates*, 103 Nev. at 204-05, 734 P.2d at 1255. The prosecutor's statements did not characterize Dr. Kern as a "perjurer or a fraud." *Id.*

*Jury selection*

Randolph argues that the district court erred when it denied Randolph's jury questionnaire. Randolph further argues that the jury venire did not represent a fair cross-section of the community because there were no African-Americans, and that there were too few people in the venire. Lastly, Randolph argues that the district court improperly changed the random selection process.

*Randolph's jury questionnaire*

Randolph argues that the district court erred when it declined to use his proposed jury questionnaire. "Decisions concerning the scope of

voir dire and the manner in which it is conducted are reviewable only for abuse of discretion, and draw considerable deference on appeal." *Lamb v. State*, 127 Nev. ___, ___, 251 P.3d 700, 707 (2011) (citations omitted) (internal quotations omitted). In *Lamb*, this court upheld a district court's oral questioning, which addressed the topic put forth in the defendant's questionnaire, rather than use the defendant's proposed questionnaire. *Id.* at ___, 251 P.3d at 707-08.

Along with general background information and the potential juror's experience with and opinion of the criminal justice system, Randolph's proposed jury questionnaire asked questions about the death penalty. The district court permitted both the State and Randolph to address and question the prospective jurors in a panel, as well as individually. Further, potential jurors were asked about his or her feelings and opinion on the death penalty, and sentencing. Therefore, we conclude that the district court did not abuse its discretion when it declined to use Randolph's proposed jury questionnaire.

*Cross-section of society*

Randolph argues that the district court erred when it did not expand the jury venire with the goal of adding an African-American. However, Randolph has put forth no evidence of systematic exclusion, and did not attempt to procure demographic information.

The Sixth and Fourteenth Amendments guarantee the defendant a jury venire from a fair cross-section of the community. *Williams v. State*, 121 Nev. 934, 939-40, 125 P.3d 627, 631 (2005). However,

> [t]he Sixth Amendment does not guarantee a jury
> or even a venire that is a perfect cross section of
> the community. Instead, the Sixth Amendment
> only requires that "venires from which juries are

drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.'"

*Id.* at 939-40, 125 P.3d at 631 (quoting *Evans v. State*, 112 Nev. 1172, 1186, 926 P.2d 265, 274 (1996)). The defendant must show the following to make a prima facie case for a fair-cross-section requirement:

> (1) that the group alleged to be excluded is a *distinctive group* in the community; (2) that the *representation of this group in venires* from which juries are selected *is not fair and reasonable* in relation to the number of such persons in the community; and (3) that this underrepresentation is *due to systematic exclusion* of the group *in the jury-selection process.*

*Id.* at 940, 125 P.3d at 631 (internal quotations omitted).

Here, Randolph argues that the district court does not keep statistics about the jury venire process, but the record does not indicate that Randolph ever asked the court for jury venire statistics. Although Randolph's attorney argued to the district court that the venire in the room with her did not include African Americans, the Sixth Amendment right does not guarantee Randolph specifically a venire that "is a perfect cross section of the community." *Id.* at 939, 125 P.3d at 631. Thus, we conclude Randolph's argument lacks merit because Randolph never requested the necessary statistics and he failed to show "systematic[ ] exclu[sion]." *Id.* at 939-40, 125 P.3d at 631.

*The random selection process*

Randolph argues that the district court erred when the court clerk called twelve potential jurors for voir dire, but did not call them in numerical order. Randolph argues that his due process rights were violated when "the district court took prospective jurors out of the random process that is in place." However, Randolph cites to no authority for the

proposition that he is entitled to a random selection of jurors, and therefore, this court will not consider the issue.[7] *Maresca v. State,* 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

Having considered Randolph's contentions and concluded that they do not warrant reversal, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:    Chief Judge, The Eighth Judicial District Court
Hon. J. Charles Thompson, Senior Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

---

[7]Randolph also argues that cumulative error warrants reversal. However, because we conclude any error committed by the district court was harmless, reversal is not warranted. *See Valdez v. State,* 124 Nev. 1172, 1188-89, 196 P.3d 465, 476 (2008); *Mulder v. State,* 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

SUPREME COURT
OF
NEVADA

(O) 1947A