JOSEPH WELDON SMITH, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 28786

January 22, 1998                          953 P.2d 264

[Rehearing denied March 23, 1998]

*Steven G. McGuire,* State Public Defender, Carson City; *Donald York Evans,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SHEARING, J.:

The facts of this case are set forth in Smith v. State, 110 Nev. 1094, 881 P.2d 649 (1994) ("*Smith I*"). On October 6, 1990, police officers for the City of Henderson entered the home of appellant Joseph Weldon Smith ("Smith") and discovered, in separate bedrooms, the bodies of Judith Cox ("Judith"), Smith's wife, and Smith's stepdaughters Kristy Cox ("Kristy") and Wendy Jean Cox ("Wendy"). On December 11, 1992, Smith was convicted of three counts of first-degree murder with use of a deadly weapon and sentenced to death for the murders of Kristy and Wendy.

In *Smith, I* we stated:

> Since the jury was not instructed that depravity of mind must include torture, mutilation or other serious and depraved physical abuse beyond the act of killing itself and since the jury may have found depravity of mind and not torture or mutilation, we hold that NRS 200.033(8) was unconstitutionally applied in this case.

110 Nev. at 1104, 881 P.2d at 655-56. Since NRS 200.033(8)[1] was the single aggravating circumstance at issue, we vacated the sentences of death and remanded the case to the district court for a new penalty hearing.

---

[1]Prior to October 1995, NRS 200.033(8) read: "The only circumstances by which murder of the first degree may be aggravated are: . . . . (8) The murder involved torture, depravity of mind or the mutilation of the victim." The revised provision states in pertinent part: "The murder involved torture or the mutilation of the victim." NRS 200.033(8). This amendment went into effect on October 1, 1995 and did not apply to murders committed before that date. 1995 Nev. Stat., ch. 467, § 2, at 1491. Accordingly, the pre-1995 version was the law at the time of Smith's trial.

On April 16, 1996, a second penalty hearing was held. After the close of evidence, Smith's counsel made a motion to dismiss all aggravating circumstances as to Kristy, arguing that there was insufficient evidence of torture, mutilation, or depravity of mind. The court granted the motion in part, eliminating the grounds of torture and mutilation of Kristy.

The jury found that the murder of Wendy involved depravity of mind and mutilation and that the murder of Kristy involved depravity of mind. The jury then found that the aggravating circumstances outweighed any mitigating circumstance or circumstances in each case and imposed a sentence of death for each murder. On May 7, 1996, the district court entered an amended judgment of conviction. Smith now appeals.

Smith argues that NRS 200.033(8) was unconstitutionally vague and ambiguous as written and as applied.

To avoid "the arbitrary and capricious infliction of the death penalty," a state "must channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' " Godfrey v. Georgia, 446 U.S. 420, 428 (1980) (footnotes omitted).

In *Godfrey,* the statutory aggravating circumstance at issue authorized imposition of the death penalty if a murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." 446 U.S. at 422. A plurality of the United States Supreme Court held that the petitioner's death sentence must be reversed because the state courts had failed to apply a narrowing construction of this aggravating circumstance. *Id.* at 432.

Writing for the plurality, Justice Stewart explained the state supreme court's responsibility to keep the statutory aggravating circumstance within constitutional bounds. *Id.* at 429. In Gregg v. Georgia, 428 U.S. 153, 201 (1976), the joint opinion by Justices Stewart, Powell, and Stevens had stated, "It is . . . arguable that any murder involves depravity of mind or an aggravated battery. But this language need not be construed in this way, and there is no reason to assume that the Supreme Court of Georgia will adopt such an open-ended construction." Thus, the state courts' construction of this aggravating circumstance determines its constitutionality.

In Deutscher v. Whitley, 884 F.2d 1152, 1162 (9th Cir. 1989), *vacated on other grounds,* 500 U.S. 901 (1991), the Ninth Circuit held that a jury instruction on depravity of mind based on NRS 200.033(8) did not satisfy the *Godfrey* requirements.[2] Accord-

---

[2]The instruction in *Deutscher* stated:

ingly, in Robins v. State, 106 Nev. 611, 629, 798 P.2d 558, 570 (1990), we adopted a narrow construction, "requiring torture, mutilation or other serious and depraved physical abuse beyond the act of killing itself, as a qualifying requirement to an aggravating circumstance based in part upon depravity of mind." Thus construed, the depravity of mind aspect of the aggravating circumstance is not unconstitutional as written. *Id.*

Since *Robins,* this court has upheld sentences of death based on depravity of mind only where there has been evidence of mutilation or of torture. In Jones v. State, 107 Nev. 632, 635, 817 P.2d 1179, 1181 (1991), we explained, "According to NRS 200.033(8), as construed by this court, depravity of mind is an aggravating circumstance where the murder involves torture or mutilation of the victim." In Domingues v. State, 112 Nev. 683, 917 P.2d 1364 (1996), *cert. denied,* 519 U.S. 968, 117 S. Ct. 396 (1996), we held that there was insufficient evidence to support the aggravating circumstance of torture, depravity of mind, or mutilation because there was no evidence that the defendant had committed an act of torture or mutilation.[3]

In the present case, the trial judge determined that there was insufficient evidence that mutilation and torture were involved in the murder of Kristy. Accordingly, the trial judge ruled that mutilation and torture would not be considered as to Kristy, and the jury was instructed as follows:

*Instruction No. 7:*[4]

The State has alleged that an aggravating circumstance is present in this case.

---

[T]he condition of mind described as depravity of mind is characterized by an inherent deficiency of moral sense and rectitude. It consists of evil, corrupt and perverted intent which is devoid of regard for human dignity and which is indifferent to human life. It is a state of mind outrageously, wantonly vile, horrible or inhuman.

884 F.2d at 1162 n.1.

[3]To the extent that the above-quoted passage from *Smith I* may have created some confusion on the issue, depravity of mind, as an aggravator, may only be relied upon where evidence of torture or mutilation exists.

[4]The trial judge interrupted defense counsel's closing argument to elaborate on Instruction No. 7 as follows:

—to the extent that Mr. Evans is saying that there may be some confusion as to whether there is one aggravating circumstance or more than one, he's absolutely correct; there is only one aggravating circumstance that is alleged by the State in this case, and that is composed of the subparts mutilation, torture or depravity of mind.

I'm going to correct what is a fairly broad instruction, which is Instruction Number 7, to specifically say, "The State has alleged that an aggravating circumstance is present in this case," so there can be no

The defendant have [sic] alleged that certain mitigating circumstances are present in this case.

It shall be your duty to determine:

(a) Whether an aggravating circumstance or circumstances are found to exist; and

(b) Whether a mitigating circumstance or circumstances are found to exist; and

(c) Based upon these findings, whether a defendant should be sentenced to life imprisonment or death.

The law never requires that you impose a sentence of death. The jury may impose a sentence of death only if it finds at least one aggravating circumstance has been established beyond a reasonable doubt and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstances found.

Otherwise, the punishment imposed shall be imprisonment in the State Prison for life with or without the possibility of parole.

*Instruction No. 8:*

You are instructed that the following factors are circumstances by which Murder of the First Degree may be aggravated:

The murder involved, torture, depravity of mind or the mutilation of the victim.

The State is alleging depravity of mind in the murder of Kristy Cox.

The State is alleging torture or depravity of mind or mutilation in the murder of Wendy Cox.

Jury Instruction No. 10 was identical to the instruction on depravity of mind given in the first penalty hearing:

The condition of mind described as depravity of mind is characterized by an inherent deficiency of moral sense and rectitude. It consists of evil, corrupt and perverted intent which is devoid of regard for human dignity and which is indifferent to human life. It is a state of mind outrageously, wantonly vile, horrible or inhuman.

In addition, on remand, the jury was given Instruction No. 11:

In order to find either torture or mutilation of a victim you

---

doubt that it is one aggravating circumstance with three subparts. One of those subparts is related to one of the victims or is alleged by the State with reference to one of the victims, all three of the subparts are alleged with reference to the other victim; but it is only one total aggravating circumstance.

must find that there was torture or mutilation beyond the act of killing itself.

In order to find depravity of mind you must find serious and depraved physical abuse beyond the act of killing itself.

Given the insufficient evidence that the murder of Kristy involved torture or mutilation, the trial judge may have implicitly decided that "serious and depraved physical abuse" involved less physical abuse than torture or mutilation. In any event, the jury was given definitions for torture and mutilation, but given no guidance as to what constitutes "serious and depraved physical abuse." This jury instruction is a departure from what this court has previously determined is constitutionally acceptable.

We conclude that the jury instruction on depravity of mind failed to properly channel the jury's discretion in connection with the charges, stemming from Kristy's death. *See Godfrey,* 446 U.S. at 428. An aggravating circumstance based upon depravity of mind must include torture or mutilation beyond the act of killing itself. We vacate the sentence of death as to Kristy and impose a sentence of life imprisonment without the possibility of parole in its place. NRS 177.055(3)(c).

Smith contends that the jury instruction regarding mutilation was unconstitutionally vague and ambiguous. Smith further contends that because the medical examiner testified that Wendy's external injuries occurred at about the same time as her death and that the blows to her head could have rendered her unconscious, torture or mutilation could not be proved beyond a reasonable doubt.

The jury was instructed "that the term mutilate means to cut off or permanently destroy a limb or essential part of the body or to cut off or alter radically so as to make imperfect." This court upheld this definition of mutilation in Deutscher v. State, 95 Nev. 669, 677, 601 P.2d 407, 412-13 (1979), *vacated on other grounds,* 500 U.S. 901 (1991).

We conclude that the jury instructions regarding mutilation were constitutionally sound. We further conclude that there was sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that the murder of Wendy involved mutilation.

Smith argues that the trial judge abused his discretion by admitting testimony and autopsy photographs regarding Judith's death. Smith contends that any probative value of this evidence was outweighed by its prejudicial effect because the hearing only concerned the murders of Kristy and Wendy.

The State argues that the probative value of evidence regarding Judith outweighed its prejudicial effect because the crimes against Judith, Kristy and Wendy were intertwined.

"The decision to admit particular evidence during the penalty phase is within the sound discretion of the trial court, and will not be overturned absent an abuse of that discretion. The evidence must be relevant and must be more probative than prejudicial." Pellegrini v. State, 104 Nev. 625, 631, 764 P.2d 484, 488 (1988) (citations omitted); *see* NRS 48.035.

The testimony and photographs regarding Judith had little probative value because Smith was not being resentenced for Judith's murder. However, the record reveals that Judith suffered few blows in comparison to Wendy. The State presented extensive testimony and autopsy photographs regarding Kristy's and Wendy's physical injuries. Evidence regarding Judith was cumulative of other evidence of violence to Wendy and Kristy; therefore, we conclude that any error in admitting it was harmless.

Smith argues that the trial judge committed reversible error in denying his constitutional right to represent himself at the second penalty hearing. Smith argues that he was forced to proceed with court-appointed counsel whom he had clearly rejected and with whom he refused to cooperate.

A defendant has an "unqualified right" to self representation provided he has made a voluntary and intelligent waiver of the right to counsel. Lyons v. State, 106 Nev. 438, 443, 796 P.2d 210, 213 (1990). However, self representation may be denied where the defendant abuses the right of self representation by disrupting the judicial process. *Id.* at 443-44, 796 P.2d at 213.

At the hearing on Smith's motion to waive counsel, the trial judge noted that Smith had engaged in several disruptive acts during trial. Additionally, the trial judge believed Smith had dilatory purposes when he moved to waive counsel. We conclude that the trial judge did not abuse his discretion when he denied Smith's motion to waive counsel.

We vacate the sentence of death for the murder of Kristy, and impose a sentence of life imprisonment without the possibility of parole in its place. We affirm Smith's sentence of death for the murder of Wendy.

ROSE, YOUNG and MAUPIN, JJ., concur.

SPRINGER, C. J., dissenting:

I dissent to the death penalty judgment with respect to the murder of Wendy. The death penalty is based entirely upon mutilation as the sole aggravating factor. The definition of mutilation given by the court is incomplete and lacks the element of specific intent. *See* Browne v. State, 113 Nev. 305, 933 P.2d 187 (1997) (SPRINGER, J., dissenting).