*1405
 
 OPINION
 

 Per Curiam:
 

 On the morning of August 31, 1995, James Montell Chappell was mistakenly released from prison in Las Vegas where he had been serving time since June 1995 for domestic battery. Upon his release, Chappell went to the Ballerina Mobile Home Park in Las Vegas where his ex-girlfriend, Deborah Panos, lived with their three children. Chappell entered Panos’ trailer by climbing through the window. Panos was home alone, and she and Chappell engaged in sexual intercourse. Sometime later that morning, Chappell repeatedly stabbed Panos with a kitchen knife, killing her. Chappell then left the trailer park in Panos’ car and drove to a nearby housing complex.
 

 The State filed an information on October 11, 1995, charging Chappell with one count of burglary, one count of robbery with the use of a deadly weapon, and one count of murder with the use of a deadly weapon. On November 8, 1995, the State filed a notice of intent to seek the death penalty. The notice listed four aggravating circumstances: (1) the murder was committed during the commission of or an attempt to commit any robbery; (2) the murder was committed during the commission of or an attempt to commit any burglary and/or home invasion; (3) the murder was committed during the commission of or an attempt to commit any sexual assault; and (4) the murder involved torture or depravity of mind.
 

 Prior to trial, Chappell offered to stipulate that he (1) entered Panos’ trailer home through a window, (2) engaged in sexual intercourse with Panos, (3) caused Panos’ death by stabbing her with a kitchen knife, and (4) was jealous of Panos giving and receiving attention from other men. The State accepted the stipulations, and the case proceeded to trial on October 7, 1996.
 

 Chappell took the witness stand on his own behalf and testified that he considered the trailer to be his home and that he had entered through the trailer’s window because he had lost his key and did not know that Panos was at home. He testified that Panos greeted him as he entered the trailer and that they had consensual
 
 *1406
 
 sexual intercourse. Chappell testified that he left with Panos to pick up their children from day care and discovered in the car a love letter addressed to Panos. Chappell, enraged, dragged Panos back into the trailer where he stabbed her to death. Chappell argued that his actions were the result of a jealous rage.
 

 The jury convicted Chappell of all charges. Following a penalty hearing, the jury returned a sentence of death on the murder charge, finding two mitigating circumstances — murder committed while Chappell was under the influence of extreme mental or emotional disturbance and “any other mitigating circumstances” — and all four alleged aggravating circumstances. The district court sentenced Chappell to a minimum of forty-eight months and a maximum of 120 months for the burglary; a minimum of seventy-two months and a maximum of 180 months for robbery, plus an equal and consecutive sentence for the use of a deadly weapon; and death for the count of murder in the first degree with the use of a deadly weapon. The district court ordered all counts to run consecutively. Chappell timely appealed his conviction and sentence of death.
 

 DISCUSSION
 

 Admission of evidence of prior bad acts
 

 Chappell contends that the district court abused its discretion by admitting evidence of prior acts of theft without holding a
 
 Petrocelli
 

 [1]
 

 hearing. During the State’s case-in-chief, LaDonna Jackson testified that Chappell was known as a “regulator”
 
 [2]
 
 and that, on one occasion, he sold his children’s diapers for drug money.
 

 Ordinarily, in order for this court to review a district court’s decision to admit evidence of prior bad acts, a
 
 Petrocelli
 
 hearing must have been conducted on the record. Armstrong v. State, 110 Nev. 1322, 1324, 885 P.2d 600, 600-01 (1994). However, where the district court fails to hold a proper hearing on the record, automatic reversal is not mandated where “(1) the record is sufficient for this court to determine that the evidence is admissible under the test for admissibility of bad acts evidence . . . ; or (2) where the results would have been the same if the trial court had not admitted the evidence.” Qualls v. State, 114 Nev. 900, 903-04, 961 P.2d 765, 767 (1998).
 

 
 *1407
 
 The district court in the instant case did not hold a
 
 Petrocelli
 
 hearing either on or off the record. Under the circumstances, we conclude that the record is not sufficient for this court to determine whether the evidence was admissible under the test for admissibility of prior bad acts evidence. In light of the overwhelming evidence of guilt in this case, however, we conclude that had the district court not admitted the evidence, the results would have been the same.
 
 See
 
 Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985) (when deciding whether an error is harmless or prejudicial, the following considerations are relevant: “whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged”);
 
 see also
 
 Bradley v. State, 109 Nev. 1090, 1093, 864 P.2d 1272, 1274 (1993). Accordingly, we hold that the district court’s failure to conduct a
 
 Petrocelli
 
 hearing before admitting this evidence amounted to harmless error, and does not, therefore, require reversal.
 

 Issues arising out of alleged aggravating circumstances
 

 Chappell argues that insufficient evidence exists to support the jury’s finding of the four alleged aggravating circumstances. The first three aggravating circumstances depend on whether Chappell killed Panos during the commission of or an attempt to commit robbery, burglary and/or home invasion, and sexual assault. Chappell’s challenge to each of these aggravators comes down to a challenge of the sufficiency of the evidence supporting each of the “aggravating” offenses.
 

 On appeal, the standard of review for sufficiency of the evidence is “whether the jury, acting reasonably, could have been convinced of the defendant’s guilt beyond a reasonable doubt.” Kazalyn v. State, 108 Nev. 67, 71, 825 P.2d 578, 581 (1992). Where there is sufficient evidence in the record to support the verdict, it will not be overturned on appeal.
 
 Id.
 
 We conclude that there is sufficient evidence to support the aggravating circumstances for robbery, burglary and sexual assault. We further conclude that the evidence does not support the aggravating circumstance of torture or depravity of mind.
 

 Robbery
 

 Chappell contends that the evidence shows that he took Panos’ car as an afterthought and, therefore, cannot be guilty of robbery. The State argues that a rational trier of fact could find that Chappell took Panos’ social security card and car through the use
 
 *1408
 
 of actual violence or the threat of violence. Under Nevada’s criminal law, robbery is defined as
 

 the unlawful taking of personal property from.the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property .... A taking is by means of force or fear if force or fear is used to:
 

 (a) Obtain or retain possession of the property;
 

 (b) Prevent or overcome resistance to the taking; or
 

 (c) Facilitate escape.
 

 The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property. A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.
 

 The statute does not require that the force or violence be committed with the specific intent to commit robbery.
 

 This court has held that in robbery cases it is irrelevant when the intent to steal the property is formed. In Norman v. Sheriff, 92 Nev. 695, 697, 558 P.2d 541, 542 (1976), this court stated:
 

 [Although the acts of violence and intimidation preceded the actual taking of the property and may have been primarily intended for another purpose, it is enough, to support the charges in the indictment, that appellants, taking advantage of the terrifying situation they created, fled with [the victim’s] property.
 

 This position was affirmed in Sheriff v. Jefferson, 98 Nev. 392, 394, 649 P.2d 1365, 1366-67 (1982), and Patterson v. Sheriff, 93 Nev. 238, 239, 562 P.2d 1134, 1135 (1977).
 
 See also
 
 State v. Myers, 640 P.2d 1245 (Kan. 1982) (holding that where aggravated robbery requires taking by force or threat of force while armed, it is sufficient that defendant shot victim and then returned three hours later to take victim’s wallet, as there was a continuous chain of events and the prior force made it possible to take the property without resistance); State v. Mason, 403 So. 2d 701 (La. 1981) (holding that acts of violence need not be for the purpose of taking property and that it is sufficient that the taking of a purse was accomplished as a result of earlier acts of pushing victim onto bed and pulling her clothes).
 

 Accordingly, we hold that there is sufficient evidence to support the conviction of robbery and the finding of robbery as an aggravating circumstance.
 

 
 *1409
 

 Burglary
 

 Chappell argues that the State adduced insufficient evidence to prove that he committed a burglary. We disagree. NRS 205.060(1) provides that a person is guilty of burglary when he ‘ ‘by day or night, enters any . . . semitrailer or house trailer . . . with the intent to commit grand or petit larceny, assault or battery on any person or any felony.” At trial, the State introduced evidence that Panos wanted to end her relationship with Chappell, that Chappell had threatened and abused Panos in the past, and that Panos did not communicate with Chappell while he was in jail. Moreover, there was testimony that the trailer appeared ransacked, and that Panos’ social security card and car keys were found in Chappell’s possession. Accordingly, we conclude that there is sufficient evidence to support the conviction of burglary and the finding by the jury of burglary as an aggravator.
 

 Sexual assault
 

 Chappell argues that the State failed to prove beyond a reasonable doubt that the sexual encounter between Chappell and Panos was nonconsensual. We do not agree. The jury was instructed to find sexual assault if Chappell engaged in sexual intercourse with Panos “against [her] will” or under conditions in which Chappell knew or should have known that Panos was “mentally and emotionally incapable of resisting.” The evidence at trial and during the penalty hearing showed that Panos and Chappell had an abusive relationship, that Panos had ended her relationship with Chappell, that Chappell was extremely jealous of Panos’ relationships with other men, and that Panos was involved with another man at the time of the killing. We conclude that a rational trier of fact could have concluded that either Panos would not have consented to sexual intercourse under these circumstances or was mentally or emotionally incapable of resisting Chappell’s advances, and that Chappell therefore committed sexual assault. Consequently, the evidence supports the jury’s finding of sexual assault as an aggravating circumstance.
 

 Torture or depravity of mind
 

 Chappell argues that the circumstances of Panos’ death do not rise to the level necessary to establish torture or depravity of mind. We agree. The depravity of mind aggravator applies in capital cases if “torture, mutilation or other serious and depraved physical abuse beyond the act of killing itself” is shown. Robins v. State, 106 Nev. 611, 629, 798 P.2d 558, 570 (1990); NRS
 
 *1410
 
 200.033(8).
 
 [3]
 
 In the present case, the jury was instructed that the elements of murder by torture are that “(1) the act or acts which caused the death must involve a high degree of probability of death, and (2) the defendant must commit such act or acts with the intent to cause cruel pain and suffering for the purpose of revenge, persuasion or for any other sadistic purpose.”
 
 [4]
 
 Panos died as a result of multiple stab wounds; thus, the first element is satisfied. The second element is not as easily met under the facts of this case.
 

 The State argues that evidence of torture may be found in the following: Panos was severely beaten by Chappell, there were numerous bruises and abrasions on Panos’ face, Panos was stabbed in the groin area and chest, Panos was stabbed thirteen times, and four of the stabs were of such force as to have penetrated the spinal cord in Panos’ neck. We conclude that there is no evidence that Chappell stabbed Panos with any intention other than to deprive her of life. No evidence exists that Chappell intended to cause Panos cruel suffering for the purposes of revenge, persuasion, or other sadistic pleasure. Nor does Chappell’s act of stabbing Panos thirteen times rise to the level of torture. Accordingly, we hold that the record does not contain sufficient evidence to support the aggravating circumstance of depravity of mind and torture.
 

 Invalidating an aggravating circumstance
 

 Invalidating an aggravating circumstance does not automatically require this court to vacate a death sentence and remand for new proceedings before a jury.
 
 See
 
 Witter v. State, 112 Nev. 908, 929, 921 P.2d 886, 900 (1996);
 
 see also
 
 Canape v. State, 109 Nev. 864, 881-83, 859 P.2d 1023, 1034-35 (1993). Where at least one other aggravating circumstance exists, this court may either reweigh the aggravating circumstances against the mitigating evidence or conduct a harmless error analysis.
 
 Witter,
 
 112 Nev. at 929-30, 921 P.2d at 900. In the present case, the jury designated as mitigating circumstances (1) that the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance, and (2) any other mitigating circumstances. We conclude that the remaining three aggravators, robbery, burglary and sexual assault, clearly outweigh the mitigating
 
 *1411
 
 evidence presented by Chappell. We therefore conclude that Chappell’s death sentence was proper.
 

 Mandatory review of propriety of death penalty
 

 NRS 177.055(2)
 
 [5]
 
 requires this court to review every death penalty sentence. Pursuant to the statutory requirement, and in addition to the contentions raised by Chappell and addressed above, we have determined that the aggravating circumstances of robbery, burglary and sexual assault, found by the jury, are supported by sufficient evidence. Moreover, there is no evidence in the record indicating that Chappell’s death sentence was imposed under the influence of passion, prejudice or any arbitrary factor. Lastly, we have concluded that the death sentence Chappell received was not excessive considering the seriousness of his crimes and Chappell as a person.
 

 Additional issues raised on appeal
 

 Chappell further contends that: (1) the State’s use of peremptory challenges to excuse two African-American jurors from the jury pool was discriminatory; (2) the district court erred in admitting hearsay statements; (3) the district court erred by denying Chappell’s motion to strike the notice of intent to seek the death penalty; (4) the State improperly appealed to the jury for vengeance during the penalty phase; (5) cumulative error denied Chappell a fair hearing; and (6) victim impact testimony denied Chappell a fair penalty hearing. We have reviewed each of these issues and conclude that they lack merit.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the judgment of conviction for robbery, burglary and first-degree murder and the sentence of death.
 
 [6]
 
 ,
 
 [7]
 

 [1]
 

 See
 
 Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985).
 

 [2]
 

 Jackson testified that a “regulator" is a person who steals items from a store and then resells those items for money or drugs.
 

 [3]
 

 NRS 200.033(8) was amended in 1995 deleting the language of “depravity of mind.” 1995 Nev. Stat., ch. 467, §§ 1-3, at 1490-91. In the present case, the murder was committed before October 1, 1995, thus, the previous version of NRS 200.033(8) applies.
 
 Id.
 

 [4]
 

 These instructions were approved by this court in Deutscher v. State, 95 Nev. 669, 677 n.5, 601 P.2d 407, 413 n.5 (1979);
 
 see
 
 NRS 200.030(1)(a) (defining first-degree murder by torture as murder “[p]erpetrated by means of . . . torture”).
 

 [5]
 

 NRS 177.055(2) provides:
 

 2. Whether or not the defendant or his counsel affirmatively waives the appeal, the sentence must be reviewed on the record by the supreme court, which shall consider, in a single proceeding if an appeal is taken:
 

 (a) Any error enumerated by way of appeal;
 

 (b) Whether the evidence supports the finding of an aggravating circumstance or circumstances;
 

 (c) Whether the sentence of death was imposed under the influence of pas,sion, prejudice or any arbitrary factor; and
 

 (d) Whether the sentence of death is excessive, considering both the crime and the defendant.
 

 [6]
 

 The Honorable Charles E. Springer, Chief Justice, voluntarily recused himself from participation in the decision of this appeal.
 

 [7]
 

 The Honorable A. William Maupin, Justice, voluntarily recused himself from participation in the decision of this appeal.